UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | * | MDL 1586 |
| IN RE ALGER, COLUMBIA, JANUS, MFS, ONE GROUP, PUTNAM and ALLIANZ DRESDNER | * | Case No. 04-MD-15863 (Judge J. Frederick Motz) |
| PAULA BEALS, individually and on behalf of all others similarly situated, Plaintiff, v. THE VARIABLE ANNUITY LIFE INSURANCE COMPANY, Defendant. | * | CASE NO. 1:05-CV-01086-JFM |

**THE VARIABLE ANNUITY LIFE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PAULA BEALS' FIRST AMENDED COMPLAINT**

## INTRODUCTION

Paula Beals' First Amended Complaint is substantively identical to the Complaint the Court recently dismissed with prejudice in *Matthew Wiggenhorn, individually and on behalf of all others similarly situated, Plaintiff vs. AXA Equitable Life Insurance Company F/K/A The Equitable Life Assurance Society of the United States, Defendant*, No. 04-372-DRH, In the U.S. District Court for the Southern District of Illinois, East St. Louis, Illinois, [Docket No. 2032].[1] Simply put, the Court was correct to dismiss the Equitable case and the two annuity cases against

---

[1] Exhibit A to this brief is a redline comparing the First Amended Complaint in *Beals* with the dismissed First Amended Complaint in *Wiggenhorn*. As the Court will see, the only difference in the complaints are the names of the parties.

Nationwide and AIG SunAmerica Life, and there is no reason the Court should reach a different result here.

## PROCEDURAL BACKGROUND

On February 15, 2005, the eve of the Class Action Fairness Act's implementation, Beals filed her Complaint against The Variable Annuity Life Insurance Company ("VALIC") in Circuit Court in Madison County, Illinois. Beals' lawsuit was the last in a series of lawsuits filed by the same counsel alleging the same allegations against variable annuity issuers like VALIC in Madison County, Illinois. The original Beals Complaint is the fourth generation complaint and the First Amended Complaint is the fifth of five generations of complaints that tinker with the language and the causes of action but involve the same factual allegations.[2] The First Amended Complaint, which updates the pleading so that it matches the pleading the Court dismissed in the *Equitable* case.

Like the other complaints, Beals' First Amended Complaint alleges that VALIC is liable for damages she and a putative class of other people incurred as a result of the trading activity of other variable annuity customers, which Beals vaguely describes as "market timers." According to Beals, these "market timers" created the claim for damages by virtue of frequent trading activities that exploited certain system weaknesses in the federally-mandated valuation method used in pricing variable annuity investments. According to Beals, VALIC is liable on a state law negligence theory.

---

[2] The mutual fund cases addressed in *Kircher* were the first generation complaint; a complaint filed and later voluntarily dismissed against AIG SunAmerica Life and others was the second; the current complaint against AIG SunAmerica Life is the third; the Original Complaint against VALIC is the fourth; and the current complaint against VALIC, Nationwide and Equitable is the fifth. Counsel for Beals have now had five bites at the apple, including the current Complaint here and the ones filed against the other variable annuity issuers, and they still cannot plead a valid claim. As a result, the Court should deny any further leave to amend and dismiss the lawsuit with prejudice.

On March 17, 2005, VALIC removed the case to the Southern District of Illinois. On March 18, 2005, VALIC filed a Notice of Related Action with the Judicial Panel on Multidistrict Litigation seeking transfer to MDL 1586 and a Motion For Stay Pending the Seventh Circuit's decision in *Kircher v. Putnam Fund Trust* in the United States District Court in the Southern District of Illinois. On March 30, 2005, Beals filed a motion to remand. On March 31, 2005, the JPML issued a conditional transfer order. On April 4, 2005, the District Court granted VALIC's Motion to Stay. Then, because no objection to the judicial transfer order was filed, the JPML transferred this case to this Court on April 18, 2005. The case lay dormant until VALIC filed its motion to dismiss in June. Beals did not oppose that motion, filing a First Amended Complaint instead.

## ARGUMENT

As this Court ruled in its June 1, 2006 Memorandum Opinion on virtually identical complaints against other variable annuity issuers, the Supreme Court's ruling in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit* eliminated any doubt that the Securities Litigation Uniform Standards Act ("SLUSA") mandates dismissal of Paula Beals' First Amended Complaint. VALIC now asks the Court to dismiss the Beals case for the same reasons it dismissed the complaints filed against AIG SunAmerica Life Insurance Company ("AIG SunAmerica Life"), Nationwide Life Insurance Company ("Nationwide") and Equitable Life Insurance Company ("Equitable").

This lawsuit is a mirror image of the three the Court dismissed on June 1. Like the others, Beals' Complaint indisputably centers on alleged omissions by VALIC in the annuity contract and prospectus. As in the other annuity cases, Beals has not asserted federal securities law claims, contending instead that VALIC owed investors duties under state law that required VALIC to adopt certain pricing procedures that supposedly would have prevented "market

timers" from making a profit at the expense of the remaining investors. Plainly hoping to avoid a federal forum, she has alleged a state law negligence claim.

As is clear from the allegations in Beals' First Amended Complaint, and as this Court and the Seventh Circuit recognized, the heart of the alleged wrongs in Beals' First Amended Complaint is the nondisclosure of "market-timing" activity. With the Supreme Court's decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* and the Court's decision in the other annuity cases in this MDL, we know that Beals' attempt to plead around the "in connection with" requirement of SLUSA fails because (i) her claim satisfies SLUSA prong (A) in that it alleges that VALIC misrepresented the value of accumulative units by using "stale prices," Docket No. 2032, and (ii) her claim also satisfies SLUSA prong (B) because the alleged damages occurred as a direct result of (i.e., "in connection with") the market timers' sales and purchases. *Id.* at 7-8. No matter the label she put on her claims—now or in the future—dismissal is appropriate.[3]

Beals' claims fail, and the Court should dismiss her case with prejudice.

## I. BEALS' CLASS ACTION CLAIMS ARE PREEMPTED BY SLUSA

There is no longer any doubt that Beals' claims are preempted by SLUSA. In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 126 S.Ct. 1503, 1509, 164 L.Ed.2d 179, 187 (2006), the Supreme Court observed that "the magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." In light of that strong federal interest and the plain language of the statute, the Court concluded that Congress intended SLUSA to be given "a broad construction" so that it bars any and all state law class action claims of misrepresentation, deception or manipulation "in

---

[3] In addition, because federal securities law preempts state law claims concerning the valuation of securities governed by the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.* (the "1940 Act"), her state law claim must be dismissed. National standards created by Congress and implemented by the Securities and Exchange Commission ("SEC") govern the pricing of the accumulation units in VALIC's variable annuity products. These uniform standards preempt Beals' attempt to create potentially conflicting and varying state law standards. Beals' tort claims are also barred by the economic loss doctrine.

connection with" the purchase or sale of covered securities, whether or not the plaintiff himself was a purchaser or seller. *Dabit,* 126 S.Ct. at 1513, 164 L.Ed.2d at 191. Beals' attempt to plead a "holder" class does not avoid SLUSA preemption.

In addition, Beals' explicit claims assert both that VALIC made a "misrepresentation or omission of a material fact" and "used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." Beals claims that VALIC was negligent because it engaged in manipulative and deceptive conduct along with "market timers" by alleging that VALIC acted in concert with the supposed market timers and, by "favoring" them over other investors. Beals' claims are specifically covered under SLUSA. *See* 28 U.S.C. § 77p(b)(2).

Beals' expressed allegations reflect what this Court has previously recognized: "the non-disclosure of the material fact of…market timing lies at the heart of the alleged wrong." Docket No. 1386, Opinion filed August 25, 2005 at page 34. Judge Easterbrook recognized the same thing in his merits opinion in *Kircher*:

> Supposed the funds stated in their prospectuses that they took actions to prevent arbitrageurs from exploiting the fact that each fund's net asset value is calculated only once a day. That statement if false (and known to be so), could support enforcement action, for the deceit to have occurred in connection with investors' purchases of the funds' securities. Similarly, if these funds had stated bluntly in their prospectus (or otherwise disclosed to investors) that daily valuation left no-load funds exposed to short-swing trading strategies, that revelation would have squelched litigation of this kind.

*Kircher v. Putnam Funds Trust,* 403 F.3d 478, 484 (7th Cir. 2005). Beals' claims are preempted by SLUSA and must be dismissed.

## II. BEALS' CLAIMS ARE PREEMPTED BY THE COMPREHENSIVE AND UNIFORM STATUTORY AND REGULATORY SCHEMES ESTABLISHED BY FEDERAL LAW

Beals' claims are preempted by federal law because any state law claim regarding the valuation of the securities at issue intrudes into an area that Congress has reserved exclusively for federal jurisdiction. The pricing of Accumulation Units is extensively regulated and solely governed by federal statute and regulation. Beals' common law claims seek to impose on VALIC duties that would conflict with these federal requirements. Beals' claims are therefore preempted and must be dismissed.

### A. Beals' claims would create duties which conflict with Federal Law and are, therefore, preempted

Federal law preempts state laws that "interfere with, or are contrary to, federal law." *Hillsborough County v. Automatic Med. Labs., Inc.*, 471 U.S. 707, 712 (1985). State law claims are preempted when "it is impossible for a private party to comply with both state and federal requirements,. . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *see also Time Warner Cable v. Doyle*, 66 F.3d 867, 875 (7th Cir. 1995). State law may also be preempted if it conflicts with, or stands as an obstacle to, federal regulations. *See Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984) ("Federal regulations have no less preemptive effect than federal statutes."). Where such a conflict exists, the Supremacy Clause of the United States Constitution requires that the federal law or regulation supplant the state law. U.S. Const. art. VI, cl. 2; *see also Time Warner Cable*, 66 F.3d at 874.

Beals' claims in this case are preempted because the duties they seek to impose on VALIC would conflict with and constitute an obstacle to the purpose and objectives of the 1940 Act and the 1940 Act regulations, which are adopted and enforced by the SEC. Specifically,

while Beals insists that VALIC has a common law duty to use non-market, fair value methods to compute AUV each day, federal law makes clear that, when available, market prices be the basis for valuing portfolio securities. VALIC cannot do what Beals asserts and remain faithful to the federal statutes and SEC rules and regulations.

For example, in *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000), the Supreme Court held that state law negligence claims based upon the absence of an air bag in plaintiff's car were preempted because Congress had affirmatively decided not to require air bags in all instances and state tort law lawsuits would stand as an obstacle to federal objectives.

As discussed below, federal law creates and controls valuation and pricing obligations. That law does not require daily "fair market" revaluation or pricing. Imposing such an obligation on VALIC — and holding it liable for not conforming to this practice previously — would therefore interfere with the federal regulatory framework and subject defendants to conflicting legal obligations. Accordingly, Beals' claims against VALIC are preempted by federal law and must be dismissed.

### 1. *The Investment Company Act of 1940 preempts Beals' claims*

The 1940 Act and rules promulgated thereunder comprehensively govern when and how registered investment companies (including VALIC Separate Account A (hereafter "Separate Account"), in which some of Beals' variable annuity assets were invested) value interests in securities held within subaccount funds. *See* 15 U.S.C. §§ 80a-2(a)(41), 80a-22(c); 17 C.F.R. § 270.22c-1.

Before the passage of the 1940 Act, investors capitalized on arbitrage opportunities available due to this distinction and investment companies' failure to follow uniform rules in valuing the mutual fund shares. To address these discriminatory valuation practices, Congress established a comprehensive valuation structure that also applies to variable annuity investments.

*See U.S. v. Nat'l Assoc. of Sec. Dealers, Inc.*, 422 U.S. 694, 706-710 (1975) (discussing history of arbitrage abuses and responsive legislation). This structure centers around two strict directives, with which all companies governed by the 1940 Act—including companies that value securities invested in variable annuity subaccounts—must comply. Section 2(a)(41), and the rules thereunder, mandate the uniform way in which all funds must value the securities they hold in their portfolios. *See* 15 U.S.C. § 80a-(2)(a)(41)(B); 17 C.F.R. § 270.2a-4. Section 22(c) and Rule 22c-1 require that individuals who place orders to purchase or redeem receive the price which is determined ***after*** the order is placed. *See* 15 U.S.C. § 80a-22; 17 C.F.R. § 270.22c-1. As discussed, federal rules and regulations mandate specific requirements for pricing accumulation units, including the requirement of "forward-pricing" and the requirement that prices be determined by the market value of securities for which market quotations are readily available. *See, e.g.*, 15 U.S.C. § 80a-22(c); 17 C.F.R. §§ 270.2a-4, 270.22c-1, and 270.22e-2. This statutory framework is so comprehensive in scope and so detailed as to indicate Congress wished fully to occupy the field of the subject matter at issue here—specifically, the method of valuing and timing of the valuation of mutual fund shares and, in the variable annuity context, Accumulation Units.

Further, the 1940 Act provides that state courts may exercise jurisdiction over disputes relating to the 1940 Act only "insofar as such jurisdiction does not conflict with any provision of this subchapter [the 1940 Act] or of any rule, regulation, or order hereunder." 15 U.S.C. § 80a-49. State courts cannot address issues that will result in a state court jury creating different valuation rules than those that Congress clearly intended to be the sole province of securities associations or the SEC. In essence, Beals' claims ask the fact finder to ignore federal law and

impose a duty on variable annuity issuers to favor some investors (the putative class) and not others (so-called "market timers"). Federal law precludes such a result.

Moreover, the 1940 Act expressly relegates to private securities associations and, ultimately, the SEC—not the states—regulatory control over the valuation of securities. *See* 15 U.S.C. § 80a-22(a)(c); *see also Nat'l Assoc. of Sec. Dealers*, 422 U.S. at 710, n. 19.

Beals alleges in connection with all counts of the Complaint that VALIC is negligent because it followed the pricing methodology set forth in customer prospectuses even though the use of allegedly "stale prices of…foreign securities to calculate the UV [Unit Value] causes the UV to be artificially high or artificially low, thereby "exposing existing sub-account holders to market timing traders." (First Amended Complaint ¶¶ 30-31.) Although the First Amended Complaint itself does not specifically identify Rule 2a-4, that Rule is the exclusive source of the duty that exists regarding valuation of such securities, and any claims regarding breaches of Rule 2a-4 necessarily are federal questions that must be brought in federal court. There can be no state court duties to do something more or different than Rule 2a-4 requires, because any such duties would conflict with the 1940 Act requirements of exclusive SEC control over valuation methods, to ensure a uniform national set of standards in this regard.[4]

Beals seeks damages because VALIC should, but allegedly did not, account for what she calls "price relevant information" in connection with the Rule 2a-4 valuations done for her annuity. (e.g., First Amended Complaint ¶ 61.) This is a term found nowhere in the 1940 Act or

---

[4] Federal pricing requirements also prove that VALIC's pricing of AUVs is not "stale" as Beals alleges. (Complaint ¶¶ 30-31.) The number of Accumulation Units an investor receives is determined when she allocates some or all of a purchase payment or accumulated proceeds to an Investment Option. Federal law requires that this value be determined after the purchase order is placed. *See* 15 U.S.C. § 80a-22; 17 C.F.R. § 270.22c1. This "forward-pricing" requirement, that all purchases and redemptions of fund shares occur at a price based on the next computed net asset value after tender of the share for redemption or the order to purchase, is a mandatory requirement of Rule 22c-1 of the General Rules and Regulations under the 1940 Act. *See* 17 C.F.R. § § 270.2a-4 and 270.22c-1.

its regulations, or anywhere else in the federal law for that matter. It represents a new and different valuation requirement than those mandated by federal law, which requires that valuation occur with reference to a market quotation, if one is readily available, and with reference to other factors only when one is not. Under Beals' claims, a state court jury will determine what is a "price relevant event" and how AUVs should be priced in consideration of such event. Beals' claims conflict with Rule 2a-4 and are therefore preempted.

### 2. *The National Securities Markets Improvement Act preempts Beals' claims*

Each of Beals' claims is also preempted by the National Securities Markets Improvement Act ("NSMIA"). In 1996, Congress vested sole regulatory power over most regulation of nationwide securities in the SEC. *See* NSMIA, PL 104-290, 110 Stat. 3417 (1996). Congress determined that dual federal and state regulation was "redundant, costly, and ineffective," and concluded that "this duplicative regulation tends to raise the cost of capital to American issuers of securities without providing commensurate protection to investors or to our markets." H.R. Conf. Rep. No. 104-864 at 39 (1996). Therefore, Congress provided for securities that "are inherently national in nature" to be "subject to only Federal regulation," with states retaining power only to regulate intrastate and regional securities. *Id.* at 40.

Section 102 of NSMIA, entitled "Creation of National Securities Markets," and codified at 15 U.S.C. § 77r, expressly preempts state regulation if it directly or indirectly attempts to regulate what information must be disclosed about national securities or directly or indirectly attempts to regulate the nature and quality of national securities. *See* 15 U.S.C. § 77r. The securities at issue here are exempt because they are issued by investment companies registered with the SEC pursuant to the 1940 Act. *See* 15 U.S.C. § 77r(b)(2).

Beals' claims regarding VALIC's alleged omissions can only be corrected by requiring changes to the prospectus or other materials. However, all state law disclosure requirements for national securities are completely preempted. *See* 15 U.S.C. § 77r(a)(2)(A). The documents covered by this statute include any documents that describe the securities that are available to investors, such as a prospectus, a statement of additional information, advertising, or sales literature. *See* 15 U.S.C. § 77r(d)(1). Beals' disclosure claims are clearly preempted.

Further, the remainder of Beals' claims are preempted because any additional state law conditions that national securities must meet are expressly preempted as well. *See* 15 U.S.C. § 77r(a)(3). The statute broadly pre-empts, any state law that limits or imposes, whether directly or indirectly, any condition on the offer or sale of any covered security, including a variable annuity. *See* 15 U.S.C. § 77r(a)(3). "Offer" and "sale" are defined as referring to "every attempt or offer to dispose of... or... to buy" a security or interest in a security, for value. 15 U.S.C. § 77b(a)(3). Beals' claims seek to do just that—impose additional conditions on national securities—and therefore her claims are preempted.

## III. <u>BEALS FAILS TO STATE A CLAIM UNDER STATE LAW</u>

The economic loss doctrine bars each of Beals' claims because she asserts tort claims yet seeks recovery for purely economic loss. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450-51 (Ill. 1982). Because Beals seeks to recover purely economic losses due to defeated expectations of a commercial bargain, she cannot recover in tort because "tort law affords a remedy for losses occasioned by personal injuries or damage to one's property, but contract law . . . . offer[s] the appropriate remedy for economic loss occasioned by diminished commercial expectations not coupled with injury to person or property." *In re Chicago Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997) (quoting *Moorman*, 435 N.E.2d at 450-51) (precluding economic loss portion of class claim for contractor's negligent supervision of pile-driving activity).

Beals' Complaint alleges that VALIC's use of "stale prices" allows "market-timing" traders to take advantage of those stale prices and "thereby dilute the ownership interests of other investment division holders." (First Amended Complaint ¶¶ 35-39.) Beals claims that "the market timing trades capture an arbitrage profit that comes dollar-for-dollar out of the pockets of the investors." (First Amended Complaint ¶ 39.) These claims are claims for lost profits, inadequate value and disappointed expectations that are exactly the type of damages barred by the economic loss doctrine. *Moorman*, 435 N.E.2d at 448-49. Thus, Beals' state law tort claims against VALIC, if they are not completely preempted by federal law, may be pursued, if at all, only under contract law. *Anderson Elec., Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 346, 249 (Ill. 1986) ("A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract.").

## CONCLUSION

VALIC respectfully requests that the Court grant judgment against Beals.

Dated: July 12, 2006

        Respectfully Submitted,

        _____/s/ DAVID A. JONES_____
        DANIEL McNEEL LANE, JR.
        Attorney-in-Charge
        Texas State Bar No. 00784441
        DAVID A. JONES
        Texas State Bar No. 00795086
        JOSEPH L. SORKIN
        Texas State Bar No. 24033215
        AKIN GUMP STRAUSS HAUER & FELD, LLP
        300 Convent, Suite 1500
        San Antonio, Texas 78205
        Telephone: 210.281.7000
        Telecopier: 210.224.2035

        Attorneys for The Variable Annuity Life Insurance Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed electronically with the United States District Court for the District of Maryland, with notice of case activity to be generated and sent electronically by the Clerk of the Court with ECF notice being sent and a copy mailed via certified mail, return receipt requested on this 12th day of July 2006, addressed to those who do not receive notice from the Clerk of the Court.

Stephen M. Tillery, Esq.
KOREIN TILLERY LLC
10 Executive Woods Court
Swansea, IL  62226

George A. Zelcs, Esq.
KOREIN TILLERY LLC
Three First National Plaza
70 West Madison, Suite 660
Chicago, IL  60602

Andrew S. Friedman, Esq.
Francis J. Balint, Jr., Esq.
BONNET, FAIRBOURN, FRIEDMAN & BALINT, P.C.
2901 North Central Avenue, Suite 1000
Phoenix, AZ  85012

                        /s/ DAVID A. JONES
                        DAVID A. JONES