UNITED STATE DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION ) | MDL 1586 |
| ) | |
| IN RE ALGER, COLUMBIA, JANUS, MFS, ) | Track No. 04-MD-15863 |
| ONE GROUP, PUTNAM, AND ALLIANZ DRESDNER ) | (Judge J. Frederick Motz) |
| ) | |
| PAULA BEALS, individually and on ) | |
| behalf of all others similarly situated, ) | |
| ) | |
|        Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:05-CV-01086-JFM |
| ) | |
| THE VARIABLE ANNUITY LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
|        Defendant. ) | |

**MEMORANDUM IN OPPOSITION TO
VALIC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

   Central to the Court's rationale for dismissing the complaint in *Wiggenhorn* (and *Mehta* and *Woodbury*) was its equating the plaintiffs' allegation of an incorrect price with a misrepresented price. Slip op. at 7 (quoting *Araujo* and equating allegation "that the defendant incorrectly priced certain investment options provided under the annuities" with an allegation of "'a misrepresentation concerning the value of the securities sold'"). Thus, the Court concluded the plaintiffs had alleged a misrepresentation of material fact (*i.e.*, the misrepresented unit price of a variable annuity) requiring the dismissal of their complaints under SLUSA.

   With all due respect, that was wrong.

   It is metaphysically impossible for a "misrepresentation" of the unit price of a variable annuity to occur before or even simultaneously with a market timing trade. The misstatement of price always and necessarily occurs ***after*** the execution of trade orders; even the market timer

does not know the unit price at which his order will be executed when he places it.[1] Orders for the purchase or sale of variable annuity units must be placed *before* 4:00 p.m. Eastern Time. Those trades are executed at the new price calculated *at or shortly after* 4:00 p.m. Eastern Time when the U.S. market closes. By the time the incorrectly calculated price is made public for the first time *at* 4:00, the mutual fund investor has already been injured by the trade for which the market time places his order *before* 4:00. Thus, even if the negligently calculated price of a variable annuity unity is deemed a "misrepresentation," it is impossible for anyone to trade (or continue to hold) in reliance on that "misrepresentation" because the trade (or decision to hold), always and invariably occurs before the "misrepresentation" occurs. Such a misrepresentation is by definition an immaterial one.

It is for this reason the Court's June 1 decision in *Wiggenhorn*, *Mehta* and *Woodbury* was wrong.

**I. The Supreme Court's decision in *Dabit* does not require the dismissal of Plaintiff's First Amended Complaint.**

Although in light of the Supreme Court's *Dabit* decision VALIC "no longer [has] any doubt that Beals'[s] claims are preempted by SLUSA," VALIC Memo at 4, the Supreme Court itself approached this very issue much more circumspectly just this past June. In *Kircher v. Putnam Funds Trust*, __ U.S. __, 126 S.Ct. 2145 (June 15, 2006), the Supreme Court was faced with an earlier iteration of the complaint at issue here.[2] Although the only issue in *Kircher* was whether SLUSA remand orders may be reviewed on appeal (and the Court held they may not), the case nevertheless presented the Court with the perfect opportunity to observe that upon remand, its

---

[1] VALIC agrees. "[I]ndividuals who place orders to purchase or redeem receive the price which is determined *after* the order is placed." VALIC Memorandum at 8.
[2] VALIC dubs the *Kircher* complaint as "the first generation complaint," and "the current complaint against VALIC … is the fifth." VALIC Memo at 2 n.2. While VALIC's counting is not accurate, the gist of VALIC's description is. The current complaint is a refinement of the *Kircher* complaint.

2

holding in *Dabit* would require the dismissal of the *Kircher* claims, if that were as obvious after *Dabit* as VALIC contends.

> The parties further dispute whether the investors' claims satisfy the other 15 U.S.C. § 77p(b) preclusion prerequisites, particularly the allegation of fraud; the investors take issue with the Seventh Circuit's characterization of their claims as charging fraud or manipulation, not mismanagement. Because the Court of Appeals lacked appellate jurisdiction, its reading of the investors' litigation position is not binding in future proceedings and is open to consideration on remand.

:*Id*. at 2157 n.15. *See also id*. at 2157 ("any claim of error on that point [in the state courts on remand] can be considered on review by this Court").

In any event, the Supreme Court only held in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 547 U.S. ___, 126 S.Ct. 1503, 1515, 164 L.Ed.2d 179 (2006), that "the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities" for purposes of SLUSA. Plaintiff's point here – that she has not alleged fraud or manipulation in connection with her purchase of VALIC's variable annuity – is not addressed in *Dabit*. *Dabit* does not require the dismissal of Plaintiff's claim.

**II.    Neither the Investment Company Act nor the National Securities Markets Improvement Act preempt Plaintiff's negligence claim.**

**A. The ICA does not preempt Plaintiff's claims.**

VALIC also contends that the Investment Company Act of 1940 (ICA) preempts Plaintiff's state law claims under principles of "conflict preemption." That contention finds no support in the ICA or case law and, in fact, is contradicted by both. To begin with, the ICA itself provides "nor shall anything in this subchapter affect the jurisdiction of … any State or political subdivision of any State, over any person, security, or transaction, insofar as such jurisdiction does not conflict with any provision of this subchapter or of any rule, regulation, or order hereunder." 15 U.S.C § 80a-49. In addition to the plain language of the statute itself, the Supreme Court has held that the ICA does "not require that federal law displace state laws …

unless the state laws permit action prohibited by the Act[], or unless 'their application would be inconsistent with the federal policy … .'" *Burks v. Lasker*, 441 U.S. 471, 479, 99 S.Ct. 1831, 1837-38 (1979).

The only case involving a similar claim of ICA preemption rejects the argument. In *Green v. Fund Asset Management, L.P.*, 245 F.3d 214 (3rd Cir. 2001), shareholders in closed-end municipal investment companies sued the companies alleging state law claims of fraud and breach of fiduciary duty in connection with the method the companies used for calculating managements fees paid to advisers. *Id.* at 217-19. The defendants argued that these state law claims were preempted by the ICA, an argument which the Third Circuit flatly rejected.

> Because Congress had found that the "corporate waste" standard was inadequate to meet the problem, it sought to provide mutual fund shareholders with additional protection from improper compensation arrangements. Nevertheless, the fact that the prior remedy might be less effective does not mean that it stands as an obstacle to "the accomplishment and execution of the full purpose and objective of Congress." Even though the common law is less effective than § 36(b) [of the ICA], it may still be the remedy of choice in certain situations. The creation of a greater protection does not mean that the lesser protection is an obstacle if a complainant elects to employ it. Moreover, the "lesser protection," even if it is more difficult for a complainant to prove a breach of the standard of care, may offer a greater range of targets and of remedies. ***Defendants have not demonstrated that Congress intended to eliminate common law access to these targets or these remedies.***

*Id.* at 225-26 (emphasis added). "We hold, therefore, that the plaintiffs' state law claims are not preempted by § 36(b)." *Id.* at 230. Thus, VALIC's contention that plaintiff's claim is in conflict with and preempted by the ICA is thus not only not supported by any authority, it is contradicted by the only authority on point.

**B.     The NSMIA does not preempt Plaintiff's negligence claim.**

Contrary to VALIC's contentions, "[t]he primary purpose of NSMIA was to preempt state 'Blue Sky' laws which required issuers to register many securities with state authorities prior to marketing in the state." *Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 108 (2d

4

Cir.2001). "By 1996, Congress recognized the redundancy and inefficiencies inherent in such a system and passed NSMIA to preclude states from requiring issuers to register or qualify certain securities with state authorities." *Id*. "To accomplish this objective, the NSMIA precludes states from imposing disclosure requirements on prospectuses, traditional offering documents and sales literature relating to covered securities." *Zuri-Invest AG v. Natwest Finance Inc.*, 177 F. Supp. 2d 189, 192 (S.D.N.Y. 2001). The NSMIA, at 15 U.S.C. § 77r(a), contains three preemption provisions .

> Subsection (a)(1) preempts state laws requiring registration or qualification of covered securities offerings. Congress enacted subsections (a)(2) and (a)(3) to prevent an end run around the first preemption provision by states seeking to impose their own registration requirements. Accordingly, subsection (a)(2) prevents states from imposing, limiting or prohibiting any condition on the use of any offering or disclosure document relating to a covered security while subsection (a)(3) prohibits state regulating authorities from requiring a securities offering to meet any merit qualifications.

*Zuri-Invest*, 177 F. Supp. 2d at 193. In addition to these express preemption provisions, the NSMIA "also has a saving clause which permits the states to retain jurisdiction over fraudulent conduct." *Id*.

> Consistent with this section, the securities commission (or any agency or officer performing like functions) of any State shall retain jurisdiction under the laws of such State to investigate and bring enforcement actions with respect to fraud or deceit, or unlawful conduct by a broker or dealer, in connection with securities or securities transactions.

15 U.S.C. § 77r(c)(1). "Thus, states retain the ability to protect investors through application of state anti-fraud laws." *Zuri-Invest*, 177 F. Supp. 2d at 193.

"Bringing suit for common law fraud in no way interferes with the regulatory mandates of the NSMIA." *Zuri*-Invest, 177 F. Supp. 2d at 197. Plaintiff does not seek to impose any disclosure requirements on VALIC and mere disclosure would not protect Plaintiff anyway. Rather, Plaintiff seeks only to recoup the losses she has sustained as a result of VALIC's negligent exposure of her investment to market timers. Her claim is not preempted.

5

### C. Because VALIC's common law duty mirrors its duty under federal law, there is no conflict and Plaintiff's state law negligence claim is not preempted by any federal law.

VALIC has not shown (nor can it) that any common law duty regarding valuation of securities would in any way conflict with VALIC's obligations under federal law. To the extent that VALIC needs to change its valuation practices in order to comply with its common law duty of reasonable care, the common law duty simply *mirrors* the federal requirements. According to the SEC, market quotations "with regard to a foreign security" are not "readily available" within the meaning of SEC regulations if "a significant event …has occurred after the foreign exchange or market has closed, but before the fund's [net asset value] calculation." Investment Company Institute, SEC No-Action Letter, 2001 WL 436249, at *3 (April 30, 2001). According to the SEC, a "significant event" is "an event that will affect the value of a portfolio security." *Id*. When a fund determines that an event that will affect the value of a portfolio security "has occurred since the closing of the foreign exchange or market, but before the fund's [net asset value] calculation, then the closing price for that security would not be considered a 'readily available' market quotation, and the fund must value the security pursuant to a fair pricing methodology." *Id*.

Plaintiff contends that VALIC was negligent for failing to evaluate on a daily basis price relevant information available to VALIC after the close of foreign securities markets and for failing to adjust calculation of daily unit values to take into account any changes in value of the foreign securities. That claim of negligence based upon a common law duty of reasonable care does not conflict with any federal law.

### II. Even if Illinois law were to apply to Plaintiff's claims, it does not require dismissal.

If the Court concludes that SLUSA does not preclude Plaintiff's claims, then it should remand this case to state court and leave it to the state courts to decide whether Plaintiff has

stated a viable claim under the appropriate state law. Although VALIC assumes that Illinois law applies to Plaintiff's claim, it has offered no reason why that would be so or why, for example, the law of its state of incorporation should not be applied. In any even, even if Illinois law were applied here, the economic loss doctrine as recognized in Illinois would not preclude this lawsuit. Claims of professional negligence in the rendition of professional services are not precluded by that doctrine. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 636 N.E.2d 503 (1994).

## Conclusion

Rather than further burden the Court with duplicative briefing, Plaintiff hereby adopts the arguments of the plaintiffs made in opposition to the motions to dismiss in *Mehta v. AIG SunAmerica Life Assurance Co.*; *Wiggenhorn v. AXA Life Equitable Life Ins. Co.*; and *Woodbury v. Nationwide*. For all of the foregoing reasons, VALIC's Motion to Dismiss should be denied.

Respectfully submitted,

\_\_\_s/ Robert L. King_____
Robert L. King
701 Market Street, Suite 350
St. Louis, MO 63101
Telephone:  314/621-4012
Facsimile:   314/621-2586
E-mail: king@swedlowking.com

*One of the attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

      The undersigned certifies that service of the aforementioned instrument was made by means of the Notice of Electronic Filing on July 31, 2006, to the following counsel of record:

Daniel McNeel Lane, Jr.
David A. Jones
Joseph L. Sorkin
Aking Gump Strauss Hauer & Feld, LLP
300 Convent, Suite 1500
San Antonio, Texas 78205

                                                                                   s/ Robert L. King